THE COUNCIL OF THE CITY       \*       NO. 2022-CA-0790
OF NEW ORLEANS

                     \*

VERSUS                        COURT OF APPEAL

                     \*

EDWARD WISNER                 FOURTH CIRCUIT
DONATION, THE                 \*
HONORABLE MAYOR            STATE OF LOUISIANA
LATOYA CANTRELL, IN HER    \* \* \* \* \* \* \*
OFFICIAL CAPACITY AND AS
TRUSTEE, MICHAEL
PENEGUY, SENATOR EDWIN
MURRAY, MAJOR CHRIS
THORNHILL AND PATRICK
NORTON

CONSOLIDATED WITH:                    CONSOLIDATED WITH:

THE COUNCIL OF THE CITY OF NEW          NO. 2022-CA-0791
ORLEANS

VERSUS

EDWARD WISNER DONATION, THE
HONORABLE MAYOR LATOYA
CANTRELL, IN HER OFFICIAL
CAPACITY AND AS TRUSTEE, MICHAEL
PENEGUY, SENATOR EDWIN MURRAY,
MAJOR CHRIS THORNHILL AND
PATRICK NORTON

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-06765, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Rosemary Ledet**
\* \* \* \* \* \*
(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge
Joy Cossich Lobrano, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

**LOBRANO, J., CONCURS IN THE RESULT**

**JENKINS, J., DISSENTS WITH REASONS**

      **ON REMAND FROM THE LOUISIANA SUPREME COURT**

Judy Y. Barrasso
Shaun P. McFall
Robert A. Waldrup
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, LLC

909 Poydras Street, Suite 2350
New Orleans, LA 70112


Justin B. Schmidt
LAW OFFICE OF JUSTIN B. SCHMIDT, LLC
1506 7th Street
New Orleans, LA 70115

COUNSEL FOR PLAINTIFF/APPELLEE

Robert L. Redfearn, Jr.
M. Claire Durio
SIMON, PERAGINE, SMITH & REDFEARN, L.L.P.
1100 Poydras Street
3000 Energy Centre
New Orleans, LA 70163-3000

COUNSEL FOR DEFENDANTS/APPELLANTS

Terrence Kent Knister
Daniel Lund
John Y. Pearce
R. Ethan Zubic
Katherine E. Clark
GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM,
DUPLANTIS, & EAGAN, LLC
201 St. Charles Avenue
40th Floor
New Orleans, LA 70170-4000

COUNSEL FOR INTERVENORS/APPELLANTS

**JUDGMENT AMENDED AND, AS
AMENDED, AFFIRMED; AND REMANDED**
**October 24, 2024**

*RML*

*TFL*

*RLB*

This is a property dispute. There are three parties to this dispute—plaintiff, defendants, and intervenors. Plaintiff is the Council of the City of New Orleans (the "Council"). Defendants are, among others, the Edward Wisner Trust Management Board (the "Board") on behalf of the Edward Wisner Donation (the "Wisner Trust") and Mayor LaToya Cantrell, as Trustee of the Wisner Trust and representative member of the Board; and Senator Edwin Murray, Major Chris Thornhill, Patrick Norton, and Michael Peneguy ("Mr. Peneguy") in their respective representative capacities as members of the Board (collectively the "Board Defendants"). Intervenors are the Wisner Family Interests, LLC; Mark E. Peneguy; Cook Family Properties, LLC; Wendell H. Cook, Jr., EWP Family Properties, LLC;  and Edward W. Peneguy, Jr. ("Wisner Family Interests").[1] The subject matter of the dispute is the ownership of the Wisner Trust's assets.

---

[1] At the time this appeal was filed, the trial court had not ruled on the Wisner Family Interests' petition to intervene. Although the Council initially filed a motion to dismiss the Wisner Family Interests' appeal, the Council withdrew that motion.

1

This case has been before this Court on multiple occasions, including two prior appeals—*In re Edward Wisner Donation*, 14-0027, 14-0028 (La. App. 4 Cir. 9/18/14), 150 So.3d 391 ("*Wisner One*"); and *City of New Orleans v. Edward Wisner Donation*, 22-0790, 22-0791 (La. App. 4 Cir. 6/9/23), 371 So.3d 74, *rev'd*, 23-01106 (La. 3/22/24), 382 So.3d 27, 29, *reh'g denied*, 23-01106 (La. 5/10/24), 384 So.3d 890 ("*Wisner Two*")—and a prior writ—*Council of City of New Orleans v. Edward Wisner Donation,* 23-0267 (La. App. 4 Cir. 7/3/24), ___ So.3d ___, 2024 WL 3288063 (addressing the Wisner Family Interests' peremptory exception of non-joinder) ("*Wisner Three*").

In March 2024, the Louisiana Supreme Court reversed this Court's decision in *Wisner Two* that the Council lacked procedural capacity to bring this suit and remanded with instructions that this Court address the issues we pretermitted in *Wisner Two*. The pretermitted issues related to the trial court's granting of the Council's request for a preliminary injunction. For the reasons that follow, we amend the judgment to delete one of the defendants—Mr. Peneguy—and, as amended, affirm the judgment. And, we remand for further proceedings on the Council's pending declaratory judgment petition.

## FACTUAL AND PROCEDURAL BACKGROUND

The background of this case—as capsulized by a student commentator—is as follows:

- Edward Wisner loved New Orleans. A real estate developer, banker, newspaper editor, and philanthropist, Wisner formed a trust in August 1914 to donate over 50,000 acres to the city he loved. Today, the value of the trust is estimated to be over $100 million.

2

- In establishing this trust, Wisner required the City of New Orleans to use funds generated from its use of the land "for the beautification of New Orleans and for the education, health and recreation of the city residents." As the trust's principal beneficiary, the City held the trust corpus and would receive the bulk of the trust's revenue. Wisner named three income beneficiaries: Tulane University, Charity Hospital, and the Salvation Army. Wisner named the Mayor of New Orleans as trustee. Notably, at the end of the trust's one-hundred-year term, Wisner expressly granted all of the trust's immovable property to the City of New Orleans.

- A year after creating the trust, Wisner died. His widow and two daughters—the "Wisner Ladies"—then sued to annul the trust. They later settled with the City and other beneficiaries by reaching three important compromises: (1) "the Wisner Ladies ratified and acknowledged the validity" of Wisner's original trust; (2) the four original beneficiaries recognized the Wisner Ladies as additional income beneficiaries, receiving a 40% interest in the trust revenues; and (3) the New Orleans City Council would create the Edward Wisner Donation Advisory Committee to represent the trust beneficiaries and control all trust-related matters. The Advisory Board would consist of five members: the Mayor as chairperson and representative of the City of New Orleans (now receiving 34% of trust revenue), and a representative of each of the four income beneficiaries: the Wisner Ladies, Tulane University, Charity Hospital (now with a 12% interest each), and the Salvation Army (now with a 1.2% interest).

- Over eighty years later, the Trust was rapidly approaching the end of its one-hundred-year term. Then-Mayor Mitch Landrieu filed a summary proceeding to clarify the terms and future of the Wisner trust. On appeal from the trial court's decision, the Louisiana Fourth Circuit Court of Appeal [in *Wisner One*] reached two conclusions: first, the Wisner trust was not perpetual and would expire in August 2014 at the end of its original one-hundred-year term, and second, the City Council's Advisory Committee was a "public body," and thus, all Advisory Committee meetings should be open to the public. After this decision, Mayor Landrieu, as trustee, was obligated to deliver the trust corpus to the city. For reasons largely unknown, this did not happen.

- Fast forward to 2020. Six years after the trust expired and unbeknownst to the City Council, New Orleans Mayor LaToya Cantrell, in her role as trustee, entered into an agreement with the other beneficiaries to extend the Wisner trust forever. The 2020 Ratification Agreement: (1) made all beneficiaries principal beneficiaries, thereby denying the City of New Orleans the trust corpus; (2) extended the trust in perpetuity; and (3) shifted management from the public Advisory Committee to a private management board ["the Wisner Board"],

which was not bound by public records, "open meeting" laws, or Council oversight.

- The Council filed [the instant] suit [against, among others, the Board Defendants], seeking a temporary restraining order and ultimate injunction [and declaratory relief], asserting "that the 2020 Ratification Agreement was an illegal disposition of public property, an impermissible modification of the trust, and an absolute nullity." The Council wanted to prevent existing beneficiaries from further depleting the trust and to stop the Mayor from distributing the trust's proceeds without Council approval. In response, the [Board Defendants] filed a dilatory exception of lack of procedural capacity or, alternatively, a peremptory exception of no right of action.

- The Wisner Family Interest[s] petitioned to intervene. The Orleans Parish Civil District Court denied the [Board Defendants'] exceptions and granted the Council a preliminary injunction. The [Board Defendants] and the Wisner Family Interest[s] appealed to the Louisiana Fourth Circuit Court of Appeal. . . .[In *Wisner Two*], [t]he Louisiana Fourth Circuit reversed the trial court's decision, holding that the Council was not a juridical person with the capacity to sue and be sued.

- The Council appealed its case to the Louisiana Supreme Court, which reversed the Fourth Circuit's judgment [in *Wisner Two*]. . . . [holding] that New Orleans's Home Rule Charter and custom establish that New Orleans's City Council has the procedural capacity to institute lawsuits in some instances.

Megan E. Koch, NOTE, *Do You Know What It Means to Love New Orleans? The Louisiana Supreme Court Revives Custom in Council of New Orleans v. Edward Wisner Donation to Grant the City Council Capacity to Protect Public Assets*, 98 Tul. L. Rev. 755-58 (2024) (footnotes omitted and reformatted).[2]

Again, this appeal is presently before us on remand from the Supreme Court to address the issues we pretermitted in *Wisner Two* regarding the October 13, 2022 judgment granting the preliminary injunction.[3] From that judgment, two

---

[2] While this appeal was pending, in November 2022, the Wisner Family Interests, filed a peremptory exception of nonjoinder in the trial court, which the trial court granted. The exception of nonjoinder is the subject of this Court's writ opinion in *Wisner Three*, which was rendered after the filing of this appeal. That decision is not pertinent to this appeal.

[3] The portion of the trial court's October 13, 2022 judgment that is before us on remand reads as follows:

separate, consolidated appeals were filed; one by the Board Defendants, the other

by the Wisner Family Interests. Although multiple pretermitted issues were raised

by the Board Defendants and the Wisner Family Interests (collectively

"Appellants"), we regroup those issues, for discussion purposes, into the following

---

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** Plaintiffs request for a Preliminary Injunction is hereby GRANTED in accordance with the following:

(1) Defendants, the purported Edward Wisner Donation (the "Wisner Trust" or "Trust"), the Mayor in her official capacity and as trustee of the purported Trust and chair of the so-called "Trust Management Board," the remaining members of the Trust Management Board, Defendants Michael Peneguy ["Mr. Peneguy"], Senator Edwin Murray, Major Chris Thornhill and Patrick Norton, and their officers, agents, employees, counsel and those persons in active concert or participating with them, including those authorized to distribute proceeds and revenues of the Trust property, are hereby prohibited and enjoined from distributing any proceeds or revenues of the purported Trust to any purported beneficiary of the purported Trust, and from making any other payments or distributions of any kind from Trust proceeds, including payments on any debts or operational expenses incurred by the Trust, without this Court's prior approval. To facilitate the Court's consideration of requests for payments or distributions. Defendants are to produce all books, records, accounting, and other documentation with regard to revenues derived from alleged Trust properties, and any payments or distributions made including those revenues, to the Court and the Council of the City of New Orleans. Recognizing the need to provide for limited expenditures to ensure the properties remain maintained and operational, the Court will accept applications for limited expenditures by public motion filed in the record of the Court. Any such motion must be accompanied by substantiating documentation justifying the need for the expenditure and must note the position of the Council of the City of New Orleans and the City of New Orleans with regard to the requested expenditure. Funds received in settlement with BP PLC, or any of its corporate affiliates, subsidiaries, parents, successors, predecessors, or assigns, for claims asserted in association with the Deepwater Horizon disaster, are excluded from this injunction.

(2) Defendant Mayor LaToya Cantrell in her official capacity and any officers, agents, employees, counsel, and those persons in active concert or participation with Mayor Cantrell, including those authorized to distribute proceeds and revenues of the Trust Property, are prohibited from distributing, transferring, or granting any Trust revenue, including any funds received in settlement with BP PLC as described in paragraph 1 above, whether received by the City prior to or after the issuance of this order, to any third parties including vendors or grantees, without prior Court approval.

This injunction took effect immediately at the time of the Court's oral ruling from the bench on the afternoon of September 28, 2022, and shall remain in place until the Court holds a trial on the merits of this matter via ordinary proceeding.

two categories: whether the preliminary injunction was properly granted and the remaining issues.[4]

**The Trial Court's Granting of the Preliminary Injunction was Proper**

An appellate court reviews a trial court's ruling on a preliminary injunction under an abuse of discretion standard. *Kern v. Kern*, 11-0915, p. 6 (La. App. 4 Cir. 2/29/12), 85 So.3d 778, 781 (citation omitted). Stated otherwise, a trial court is vested with broad discretion in granting a preliminary injunction; "its ruling will not be disturbed on review absent clear abuse of that discretion." *Downtown Dev. Dist. of City of New Orleans v. City of New Orleans*, 18-0726, p. 15 (La. App. 4 Cir. 5/8/19), 272 So.3d 917, 929 (internal citations and quotations omitted). "That broad standard is, of course, based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion." *Id*., 18-0726, pp. 15-16, 272 So.3d at 929 (internal quotations and citation omitted).

The primary issue here is whether the trial court properly issued a preliminary injunction. Summarizing the injunctive relief requirements, this Court in *HCNO Servs., Inc. v. Secure Computing Sys., Inc*., 96-1693 (La. App. 4 Cir. 4/23/97), 693 So.2d 835 ("*HCNO*"), observed:

- An injunction shall issue in cases where irreparable injury, loss, or damage may occur to the applicant.

---

[4] The Board Defendants raise five additional issues: (i) the court erred in granting a preliminary injunction; (ii) the court erred in granting a mandatory injunction; (iii) the court erred in granting a preliminary injunction beyond that prayed for by the City Council; (iv) the court erred in failing to require the City Council to post a bond; and (v) the court erred in entering a judgment against Michael Peneguy. The Wisner Family Interests raise two additional issues: (i) the court erred in implicitly finding that the City is the sole owner of the trust corpus; and (ii) the court erred by improperly issuing a preliminary injunction.

- During the pendency of an action for injunction, the court may issue a temporary restraining order, preliminary injunction or both. La. C.C.Pro. art. 3601.[5]

- A preliminary injunction is an interlocutory procedural device designed to preserve the existing status pending a trial of the issues on the merits of the case.

- To obtain a preliminary injunction, the applicant must show that the damage he will suffer may be irreparable if the injunction does not issue, that he is entitled to the relief sought, and must make a prima facie showing that he will prevail on the merits of the case.

- Because injunction is a harsh, drastic and extraordinary remedy, it should issue only if the applicant is threatened with irreparable loss without adequate remedy at law.

- Irreparable injury means the applicant cannot be adequately compensated in money damages for his injury or suffers injuries which cannot be measured by pecuniary standards.

- If, however, the judgment would be valueless because of insolvency of the judgment debtor or other reasons, injunctive relief may be proper.

*HCNO*, 96-1693, 96-1753, pp. 10-11, 693 So.2d at 841-42.

To address Appellants' arguments regarding the granting of the preliminary injunction, we divide our analysis of the issue into three subparts: (i) prohibitory or mandatory nature of injunction, (ii) irreparable injury, and (iii) prima facie case.

*Prohibitory or Mandatory Nature of Injunction*

Before addressing the merits of whether the preliminary injunction was properly granted, we first must determine whether the injunction was a mandatory one, as opposed to a prohibitory one—a distinction that has procedural and evidentiary significance. *See Saer v. New Orleans Reg'l Physician Hosp. Org.*, 14-856, p. 5 (La. App. 5 Cir. 3/25/15), 169 So.3d 617, 620 (observing that "[t]he

---

[5] *See* La. C.C.P. art. 3601(A) (providing that "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law."

distinction between a prohibitory injunction and a mandatory injunction matters in terms of both procedure and evidence")

As the jurisprudence has recognized, "[a] prohibitory injunction is one that seeks to restrain conduct. A mandatory injunction, on the other hand, commands the doing of some action and cannot be issued without a hearing on the merits." *Constr. Diva, L.L.C. v. New Orleans Aviation Bd.*, 16-0566, p. 8 (La. App. 4 Cir. 12/14/16), 206 So.3d 1029, 1035, n.4 (internal citations and quotations omitted); *see also Meredith v. I Am Music, LLC*, 18-0659, p. 5 (La. App. 4 Cir. 2/13/19), 265 So.3d 1143, 1146. Simply stated, a prima facie showing is sufficient proof to support the issuance of a prohibitory injunction. But, proof by a preponderance of the evidence at a full evidentiary hearing is required to support the issuance of a mandatory injunction. *See Randazzo v. Imbraguglio,* 21-0679, p. 12 (La. App. 4 Cir. 5/25/22), 343 So.3d 852, 861.

As a commentator observes, "[b]ecause a mandatory injunction may alter the preexisting status of the parties, the jurisprudence has established that it has the same basic effect as a permanent injunction, and therefore may not be issued on merely a prima facie showing." 1A La. Civ. L. Treatise, Civ. Proc. - Special Proceed., § 1.2. Indeed, this Court has observed that "[g]iven mandatory injunctions and prohibitory injunctions have different procedural rules and evidentiary burdens, as a matter of law it is not possible to issue a mandatory preliminary injunction." *Hyman v. Puckett*, 15-0930, p. 8 (La. App. 4 Cir. 5/4/16), 193 So.3d 1184, 1189; *see also NGA 911, LLC v. Orleans Par. Commc'n Dist.*, 21-0287, p. 12 (La. App. 4 Cir. 1/27/22), 337 So.3d 984, 993 (observing that the "trial court erred as a matter of law, first, by cumulating the actions for preliminary and

8

permanent injunctive relief, and second, by granting a permanent injunction absent a full evidentiary hearing").

The Board Defendants contend that the preliminary injunction, at least in part, is mandatory in that it orders the doing of something—that they produce all books, records, accounting, and other documentation with regard to revenues derived from alleged trust properties, and any payments or distribution made including those revenues to the court and the Council. The Board Defendants, thus, contend the injunction was improperly granted without sufficient proof.

Both at oral argument before this Court and in its appellee brief, the Council argued that the preliminary injunction the trial court issued is a prohibitory one in that it preserves the status quo by precluding distribution of the trust funds. The Council emphasized that the trial court's inclusion in its judgment of an ancillary order to produce documents did not transform the prohibitory injunction into a mandatory one. Indeed, according to the Council, the injunction does not command the Board Defendants to do anything unless they seek an exception to the injunction—a distribution of Trust funds.

We characterize the injunction as a prohibitory one, not a mandatory one. Insofar as the trial court ordered certain actions be taken, those actions are required only when an exception to the injunction is requested—that distributions from the Trust be made. Indeed, the trial court explained that there would be no disbursements without court approval. Thus, the Board Defendants' argument that the injunction is a mandatory one, subject to additional proof requirements, is unpersuasive.

*Irreparable Injury*

9

The next issue is whether the Council satisfied the requirements for obtaining a preliminary injunction. The first requirement is a showing of irreparable injury. "Irreparable injury means '[a]n injury that cannot be adequately measured or compensated by money and is therefore often considered remediable by injunction.'" *Limousine Livery, Ltd. v. A Airport Limousine Serv., L.L.C.*, 07-1379, p. 8 (La. App. 4 Cir. 3/12/08), 980 So.2d 780, 785 (quoting Bryan A. Garner, BLACK'S LAW DICTIONARY, 801 (8th ed. 2004)). But, the jurisprudence has recognized that when "[a monetary] judgment would be valueless because of insolvency of the judgment debtor or other reasons, injunctive relief may be proper." *HCNO*, 96-1693, 96-1753, p. 11, 693 So.2d at 842.

The Council, in its petition, outlined the irreparable injury on which it relies in seeking a preliminary injunction as follows:

- At present there are no fewer than fifty purported beneficiaries—including private individuals, two trusts, and two religious institutions across eleven states and twenty-four distinct jurisdictions—receiving income distributions from the Trust[.]

- Given the remarkable geographic and jurisdictional diversity amongst the purported beneficiaries, recouping sums from the Trust already paid is impossible.

- Because income distributions continue to be made to prior beneficiaries who are no longer entitled to them, the City of New Orleans is being divested of millions of dollars in revenue to which it is entitled.

- Moreover, because the Mayor—by way of the invalid Ratification Agreement—reserved to herself the authority to distribute the City's portion of Wisner funds without Council oversight, the City is continually being divested of funds which rightly belong to it.

- Furthermore, these are funds which the City will not recover once distributed.

- Undoubtedly these actions are irreparably injuring the City and can only be remedied by an injunction to cease income distributions to prior beneficiaries, and an injunction to preclude the City from entering into new contracts predicated on funding from the Wisner property.[6]

At the preliminary injunction hearing, the trial court raised the irreparable injury issue; the trial court posed the following query to the Council's attorney:

> You are saying irreparable injury as a result of disbursement of funds. Jurisprudence in Louisiana, from what I understand, is that when there is a money injury that may not constitute irreparable damage if it can be cured with monetary damages. Why is this case distinguishable from that?

In response, the Board's attorney echoed the allegations in the Board's petition, quoted elsewhere in this opinion, and cited *Oestreicher v. Hackett*, 94-2573 (La. App. 4 Cir. 5/16/95), 660 So.2d 29, as supporting a finding of irreparable injury here.

The *Oestreicher* case was a dispute between two former law partners arising out of their law firm's dissolution. The partners—Hackett (appellant) and Oestreicher (appellee)—disputed a settlement fee received in connection with a case on which they both had worked. Oestreicher argued that Hackett settled the case without his knowledge and then deposited the settlement fee into Hackett's bank accounts. Oestreicher further argued that he was entitled to half of the fee, that Hackett was insolvent, and that injunctive relief was required to protect the money until the issues could be litigated. Hackett disputed both his insolvency and the issuance of injunctive relief. Affirming the trial court's ruling granting a preliminary injunction, this Court observed:

> [I]nsolvency of the judgment debtor is only one reason why injunctive relief may be proper. In this case, we believe it is proper because Hackett has been less than candid during the pendency of this case. For

---

[6] Note, the allegations of the petition are reformatted in this opinion; the content is the same.

example, according to an affidavit filed by defense counsel in the Cormier [client's] case, Hackett assured [the client] that he had full authority to settle the case without Oestreicher, and despite the fact that Oestreicher had filed an intervention in the case. Hackett also made misrepresentations to the trial court concerning whether or not Oestreicher had posted bond in connection with the preliminary injunction. Also, in his own Affidavit in Opposition to Application for Preliminary Injunction, he stated, "[b]ecause of Mr. Oestreicher's repeated breaches of other essential terms of the dissolution agreement ..., I informed Mr. Oestreicher that I considered myself no longer bound by the Cormier fifty percent fee split."

A preliminary injunction is an interlocutory device designed to preserve the existing status pending a trial of the issues on the merits of the case. Because of Hackett's actions surrounding this case, we cannot be assured that the status quo will be maintained until a trial on the merits is had.

*Oestreicher*, 94-2573, pp. 4-5, 660 So.2d at 31-32 (internal citation omitted).

Hence, this Court, in *Oestreicher*, affirmed the granting of a preliminary injunction—freezing a bank account—because one of the parties—Hackett—had been less than candid during the pendency of this case and because the status quo needed to be maintained until a trial could be held on the merits. *Oestreicher*, 94-2573, p. 5, 660 So.2d at 32.

The Council argues the circumstance of this case are analogous to those presented in *Oestreicher*. In support, the Council contends that the Board Defendants' responses regarding disclosing the identity of Trust Fund recipients throughout the pendency of this case have been less than candid. The Council further contends that it established irreparable harm by showing that during the pendency of this case, millions of dollars of Trust funds will continue to flow to scores of individuals and entities around the country, some of whom are still unknown because of the misrepresentations regarding the recipients' identity. The Council points out that the record evidence supports a finding that a money judgment would be valueless and an inadequate remedy. According to the Council,

any monetary relief will be inadequate because recovering from scores of unknown individuals will be costly, likely futile, and ultimately valueless. Thus, the Council contends that the harm it faces, but for the injunction, is irreparable, and puts the rightful owners of the Trust—the City and its citizens—at risk of losing millions of dollars.[7]

The Wisner Family Interests counter that the Council did not produce any evidence to prove that it could not be adequately compensated in money damages for a monetary claim; rather, the Council merely speculated that recovery of damages from defendants in other states would be inconvenient—not imminent and certain as required—possibly making a favorable judgment valueless. They contend that such allegations are insufficient to establish irreparable injury. *See Faubourg Marigny Imp. Ass'n. v. City of New Orleans*, 15-308 (La. App 4 Cir. 5/25/16), 195 So.3d 606; *See also* La. C.C.P. art. 3601.

Based on our review of the record, we conclude, as the Council contends, that this case falls within the narrow circumstances, illustrated in the *Oestreicher* case. In those circumstances, the jurisprudence has recognized that, despite the monetary nature of the injury, the irreparable injury requirement can be satisfied because a money judgment likely will be valueless—either because of the judgment debtor's insolvency or for other reasons such as evidence of the unlikelihood the judgment will be paid. This finding is buttressed by the United States Supreme Court's holding that "[a]s for irreparable harm: Normally the mere

---

[7] The Council makes the alternative argument that it was not required to show irreparable injury here given that the unlawful conduct exception applies. In support, the Council contends that the evidence and law establish that the 2020 Modification Agreement violated numerous prohibitory laws and the Louisiana Constitution. Given our finding that the irreparable injury requirement is met, we do not reach this argument.

payment of money is not considered irreparable, *see Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), but that is because money can usually be recovered from the person to whom it is paid. If expenditures cannot be recouped, the resulting loss may be irreparable." *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304, 131 S. Ct. 1, 4, 177 L. Ed. 2d 1040 (2010). Such is the case here. We, thus, conclude the Board satisfied the irreparable harm requirement.

*Prima Facie Case*

Besides irreparable harm, a petitioner seeking a preliminary injunction must establish two other requirements—the petitioner's entitlement to the relief sought and the petitioner's ability to prevail on the merits of the case. We address those two requirements together as the prima facie case requirement. The standard of proof for satisfying the prima facie case requirement is less than that required for a permanent injunction; "[o]nly a prima facie showing is required." *Hall v. Fertility Inst. of New Orleans*, 94-1135, p. 4 (La. App. 4 Cir. 12/15/94), 647 So.2d 1348, 1351 (internal quotations and citations omitted).

In its petition, the Council seeks a declaratory judgment on three points: (1) the Wisner Trust is expired; (2) the 2020 Modification Agreement is an absolute nullity; and (3) the City of New Orleans is the sole owner of the Trust property and all revenues generated therefrom. The Council contends that the trial court correctly found that the Council made a prima facie showing on all three of these factors.

Finding the Council satisfied its burden, the trial court, in its oral reasons for judgment, observed:

> [I]n this Court's estimation [the Wisner Trust] was not properly modified, it's not properly extended, it's against the res judicata of the Fourth Circuit's decision of September 2014 [in *Wisner One*] wherein

the Court ruled unequivocally, and as a matter of fact Judge Belsome even said it was nonsensical, that it was in perpetuity because it ended on August 4, 2014. Now, what needs to happen is all of the books, all of the accounting, all of the documentation with regard to any revenues derived from that property to be turned over to the City of New Orleans and to the City Council. The Court finds it is not to be under private management. Those are public funds. They need to be accounted for as public funds and they need meetings held to determine the expenditure of those funds. It needs to be done in a public venue before the City Council. And that is to stay in place until we have a trial via ordinary proceeding on the merits as to the issue of whether a permanent injunction should issue and whether or not a further declaratory judgment should be issued. And that is to go into effect immediately. We need to reconcile this, clarify this, because this is for the benefit of the Citizens of the City of New Orleans and it's to be done in accordance with law.

Implicitly, the trial court found that the Board satisfied the prima facie case requirement.[8] Given the language of the Wisner Trust document itself coupled with this Court's holding in *Wisner One*, we conclude, agreeing with the trial court, that the Board sufficiently satisfied the prima facie case requirement.

The Wisner Family Interests additionally contend that in any injunction case, a court must balance the relative harms both to the party seeking the injunction if it is denied and to the party against whom the injunction is sought if it issues. They contend that such balancing was not conducted here. The Council counters that, although not required to be shown, the balance of harms favors the Counil as millions of dollars of public funds could never be recovered if they are wrongly distributed. Meanwhile, any purportedly wrongful deprivation for Appellants would only be temporary.

The jurisprudence regarding balancing of relative harms in an injunction case has recognized that "[b]efore issuing a preliminary injunction, the trial court

---

[8] Contrary to the Wisner Family Interests' contention, the trial court did not decide the Trust ownership issue; rather, the trial court found the Council made a prima facie showing that it may ultimately succeed on the merits of the ownership inquiry and that, in the interim, the Council is likely to face irreparable harm.

should consider whether the threatened harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest." *Freeman v. Treen*, 442 So.2d 757, 763 (La. App. 1st Cir.1983) (citations omitted);.*see also Kruger v. Garden Dist. Ass'n*, 00-1135, p. 10 (La. App. 4 Cir. 1/17/01), 779 So.2d 986, 992 (observing that "the court should resort to a 'duty-risk' analysis obliging it to weigh whether the potential for harm in erroneously providing injunctive relief is substantially greater than that created by refraining from providing such relief" and included in that analysis, "the court must consider the extent to which the relative harms are compensable in money damages").

Contrary to the Wisner Family Interests' contention, we find the balancing of harm was considered by the trial court in concluding that the Council satisfied the requirements for obtaining a preliminary injunction. For all these reasons, we find the trial court did not abuse its broad discretion in granting the preliminary injunction.

**The Remaining Issues**

There are two remaining issues: (i) whether Mr. Peneguy was improperly included in the judgment; and (ii) whether the trial court's failure to require the Council to post a bond was improper.

*Improper Inclusion of Mr. Peneguy in the Judgment*

The Board Defendants contend that the trial court erred in entering a preliminary injunction against Mr. Peneguy given that he was not served.[9]

---

[9] Not only was he not served, but also the Council's petition includes a clerical error—it identifies Mr. Peneguy incorrectly as Edward Michael Peneguy in the petition, but correctly identifies him in the caption.

Louisiana law requires service on a party before a preliminary injunction can be issued against that party. La. C.C.P. art. 3602 (providing that "[a] preliminary injunction shall not issue unless notice is given to the adverse party and an opportunity had for a hearing"); *Moskau v. Moskau*, 375 So.2d 392 (La. 1979) (observing "[p]reliminary injunction vacated as issued without adequate service and notice upon the relator"). Because this was not done and Mr. Peneguy did not make an appearance waiving service, we conclude, as the Board Defendants contend, that the judgment must be amended to delete Mr. Peneguy as a defendant.

*The Trial Court Properly Did Not Require the Board to Post a Bond*

The Board Defendants also contend that the trial court erred in not requiring the Council to post a bond for the preliminary injunction. The Council counters that no appeal bond is required of public entities like it. *See* La. R.S. 13:4581. We agree.[10] The Board Defendants' argument to the contrary is unpersuasive.

## DECREE

For the foregoing reasons, the trial court's October 13, 2022 judgment is amended to delete Michael Peneguy as a defendant; and the judgment, as amended, is affirmed. This matter is remanded to the trial court to address the pending declaratory judgment petition.

**JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED; AND REMANDED**

---

[10] La. R.S. 13:4581 provides:

> The state, state agencies, political subdivisions, parish, and municipal boards or commissions exercising public power and functions, sheriffs, sheriffs' departments, and law enforcement districts, the Louisiana Insurance Guaranty Association, the Louisiana Citizens Property Insurance Corporation, and the Patient's Compensation Fund, or any officer or employee thereof, shall not be required to furnish any appeal bond or any other bond in any judicial proceedings instituted by or brought against them, that arise from activities within the scope and course of their duties and employment.